SUSAN BLACK DUNN, #3784
W. LEWIS BLACK, #13497
**DUNN & DUNN, P.C.**
3115 E. Lion Lane, Suite 160
Salt Lake City, Utah 84121
Telephone: (801) 521-6677
Facsimile: (801) 521-9998
sblack@dunndunn.com
wlblack@dunndunn.com

*Attorneys for Defendant Continental Automotive Systems, Inc., f/k/a Continental Teves, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SALLY SYLVESTER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JESSE LABRUM, DECEASED, DIAN LARSEN, CAROLYN DUTSON, DON LABRUM, GARY LABRUM, DOYLE LABRUM, AND BRUCE LABRUM,<br><br>PLAINTIFFS,<br><br>VS.<br><br>BLUE BIRD CORPORATION, ET AL.,<br><br>DEFENDANTS. | **DEFENDANT CONTINENTAL AUTOMOTIVE SYSTEMS, INC. F/K/A CONTINENTAL TEVES, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>CASE NO. 2:18-CV-00470-HCN-CMR<br><br>JUDGE HOWARD C. NIELSEN, JR.<br><br>MAGISTRATE JUDGE CECILIA M. ROMERO |

Pursuant to Fed. R. Civ. P. 56(a), Defendant Continental Automotive Systems, Inc., f/k/a Continental Teves, Inc. ("Defendant" or "CAS"), a non-resident corporation, by and through its counsel of record, hereby files this Motion for Summary Judgment as follows:

## I. INTRODUCTION AND RELIEF SOUGHT

CAS is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs brought this action against Defendants alleging that Jesse Labrum ("Mr. Labrum") was exposed to asbestos from brakes, clutches, and gaskets during his dismantling of vehicles as the main part of his work at his business, Labrum Auto Wrecking, performing routine maintenance on personal vehicles belonging to himself, friends and family, and as part of his work during his service in the United States Army from 1944-1946. Plaintiffs allege that, because of such asbestos exposure, allegedly from Defendants' various products, Mr. Labrum contracted malignant mesothelioma, and died from such exposure. Mr. Labrum's sons – Don Labrum, Wayne Labrum, and Doyle Labrum – who are named Plaintiffs and were also co-workers of Mr. Labrum were all deposed, and the Parties have exchanged extensive written discovery and disclosures. None of the testimony or discovery responses identified any asbestos-containing products for which CAS could be held responsible. As such, Plaintiffs' claims fail at the summary judgment stage on the threshold element of causation. Plaintiffs have no evidence that (1) Mr. Labrum was exposed to asbestos from any asbestos-containing product manufactured or supplied by CAS' predecessor during his employment at Labrum Auto Wrecking, or (2) that any product of CAS' predecessor was a "substantial factor" in causing Mr. Labrum's alleged asbestos-related disease.

Plaintiffs filed the above-captioned lawsuit against approximately twenty defendants, including CAS, for Mr. Labrum's alleged exposures to asbestos. According to Plaintiffs, Mr. Labrum was exposed to asbestos while working at Labrum Auto Wrecking from the 1960s to the 2000s, dismantling numerous vehicles. As a result of these alleged exposures to asbestos, Plaintiffs

claim Mr. Labrum was diagnosed with mesothelioma on or around June 6, 2017. Mr. Labrum passed away on July 27, 2017.[1]

Don Labrum was deposed on February 25, 2020. Wayne Labrum was deposed on February 26, 2020. Doyle Labrum was deposed on February 27, 2020. None of these witnesses identified any products manufactured by CAS' predecessor. Plaintiffs have offered no other product identification witnesses.

Consequently, there is no evidence of Mr. Labrum's exposure to asbestos from any CAS product. Without proof that any product for which CAS may be responsible was a substantial contributing factor in bringing about Mr. Labrum's alleged asbestos-related injuries, CAS is entitled to summary judgment as a matter of law.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendant CAS' predecessor was formed in or about 1976 as "Alfred Teves, Inc." ("Teves"), a wholly-owned subsidiary of ITT Corporation, to supply original equipment brake caliper assemblies to U.S. domestic automobiles. The corporate existence of Continental Teves, Inc. began in 1998 when Continental AG purchased from ITT Automotive, Inc. its Brake and Chassis Division, which included Teves. After the purchase, Teves was renamed "Continental Teves, Inc.," which was later renamed as "Continental Automotive Systems, Inc."[2]

---

[1] *See* plaintiffs' Original Complaint and Amended Complaint, part of the Court's record.
[2] *See* Appendix, Exhibit A, Continental Automotive Systems, Inc. f/k/a Continental Teves, Inc.'s Objections, Answers and Responses to Plaintiffs' First Case-Specific Interrogatories and Requests for Production to Defendants, pp. 2-3.

2. Neither CAS nor its predecessor ever milled, mined, processed, purchased, or sold raw asbestos fiber, nor did it ever design or manufacture any asbestos-containing components as those terms are commonly used.[3]

3. Beginning in 1977, CAS' predecessor, Teves, manufactured original equipment brake caliper assemblies at its Culpeper, Virginia plant according to specifications of original equipment automotive manufacturers for use in certain makes and models of domestic Ford passenger vehicles. Beginning in or about 1980, moreover, Teves also manufactured original equipment brake caliper assemblies for use in certain makes and models of domestic Chrysler passenger vehicles. Depending on the year of manufacture, these brake caliper assemblies may have contained asbestos-containing brake pads.[4]

4. To the extent that any asbestos-containing brake pads were installed in any of these caliper assemblies, such components were not designed or manufactured by Teves but were supplied by third-party manufacturers according to the specifications of the original equipment automotive manufacturers.[5]

5. Additionally, between 1980 and the mid-1990s, Teves, at the direction of the original equipment manufacturer is believed to have supplied limited quantities of dealer service repair kits directly to the original equipment manufacturer for use by original equipment manufacturer's dealerships. These service kits consisted of the entire brake caliper assembly described above. To CAS' knowledge, Teves did not sell, supply, or distribute service repair kits directly to dealerships, and they were not otherwise available on the aftermarket or "sold" or

---

[3] *See id.*, p. 3.
[4] *See id.*, pp. 7-8.
[5] *See id.*, pp. 3-4.

"distributed," as those terms are commonly understood.[6] Because of this, the only potential for an individual to come into contact with a brake pad supplied by Teves was in the course of an original brake job.

6. Over the 1980s, Teves (along with the rest of the U.S. automotive industry) phased out the use of asbestos-containing brake pads, and, by the mid-1990s, Teves no longer used asbestos-containing brake pads. By the time that Continental Teves, Inc. acquired the Culpeper plant operations in 1998, no known asbestos-containing products were utilized.[7]

7. Jesse Labrum's son and co-worker Don Labrum was deposed on February 25, 2020. He could not recall or identify the brand name or manufacturer of any brake product his father worked on or with.[8]

8. Jesse Labrum's son and co-worker Wayne Labrum was deposed on February 26, 2020. He testified that, regarding a long list of vehicles he worked on, he did not know the brand name or manufacturer of any brake removed from any such vehicle.[9]

9. Jesse Labrum's son and co-worker Doyle Labrum was deposed on February 27, 2020. He testified he could not remember seeing any writing, symbols, or logos on any of the brakes he removed.[10] He further testified that he could not specifically identify the brand or manufacturer of any of the brakes he removed.[11]

---

[6] *See id.*, p. 8.
[7] *See id.*
[8] *See* Appendix, Exhibit B, Deposition of Don Labrum, February 25, 2020, at 300:15-301:13.
[9] *See* Appendix, Exhibit C, Deposition of Wayne Labrum, February 26, 2020, at 191:8-192:9.
[10] *See* Appendix, Exhibit D, Deposition of Doyle Labrum, February 27, 2020, at 94:19-22.
[11] *See id.* at 94:23-95:3.

10. Plaintiffs have not identified any other witness who would offer product identification testimony.

11. Through written discovery, Plaintiffs responded to the agreed-upon Master Interrogatories and Requests for Production and the Master Friction Interrogatories and Requests for Production. None of these responses identified any product manufactured by CAS.[12]

12. Other than the unsupported allegations in their Complaint and Amended Complaint, Plaintiffs have offered no evidence that identifies any product manufactured or sold by CAS, let alone any asbestos-containing product.

### III. ARGUMENT

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[13] Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a trier of fact or, conversely, is so one-sided that one party must prevail as a matter of law.[14]

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.[15] A question of material fact is a question that will be outcome

---

[12] *See* Appendix, Exhibit E, Plaintiffs' Answers and Objections to Master Interrogatories, and Exhibit F, Plaintiffs' Answers and Objections to Master Friction Interrogatories.

[13] Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

[15] *Celotex*, 477 U.S. at 325.

determinative of an issue in the case.[16] Once the moving party has met the initial burden, the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine material issue for trial.[17] Where the nonmoving party bears the burden of proof at trial, the nonmoving party must then point to the specific evidence establishing a genuine issue of material fact concerning each challenged element.[18] Mere allegations are insufficient to survive a motion for summary judgment.[19] Although Plaintiffs are "entitled to all favorable inferences, [they] are] not entitled to build a case on the gossamer threads of whimsy, speculation and conjecture."[20] Therefore, summary judgment should be granted when the plaintiff "fails to make a showing

---

[16] *Anderson*, 477 U.S. at 248.
[17] *Celotex*, 477 U.S. at 324.
[18] *Anderson*, 477 U.S. at 256–57 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 994 (10th Cir. 2019) ("If the movant [demonstrates to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim], the burden then shifts to the nonmovant to 'set forth specific facts showing that there is a genuine issue for trial.' If the movant 'fails to make a showing sufficient to establish the existence of an element,' the Federal Rules of Civil Procedure 'mandate [] the entry of summary judgment.'") (quoting *Anderson*, 477 U.S. at 250 and *Celotex*, 477 U.S. at 322); *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018) ("[S]ummary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and that nonmovant cannot identify specific facts that would create a genuine issue."); *Helget v. City of Hays*, 844 F.3d 1216, 1223 n.3 (10th Cir. 2017) ("[The plaintiff] must present her own affirmative evidence of those facts which are contradicted by the interested testimony."); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002) ("[R]esponding party must demonstrate that there is a genuine fact dispute… by presenting sufficient, contradictory evidence which, if presented at trial, would allow a jury to return a verdict in the responding party's favor.").
[19] *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004); *see Anderson*, 477 U.S. at 256–57 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013) (same).
[20] *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 7, 264 P.3d 752 (Internal citations omitted).

sufficient to establish the existence of an element essential" to his or her case, as "a complete failure of proof concerning an essential element…renders all other facts immaterial."[21]

### B. Standard of Proof

Because this case was filed in Utah, it must be analyzed under applicable Utah law. Pursuant to the Utah Product Liability Act, U.C.A. §78B-6-701 et seq., in any action for damages for personal injury, the plaintiff must show that "at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer."[22] To avoid summary judgment, the plaintiff needs "to submit some evidence that there was a defect in the [product], that the defect existed at the time the [product] was sold, and that the defect made the [product] unreasonably dangerous."[23] There is a statutory presumption of nondefectiveness under the Utah Product Liability Act. U.C.A. § 78B-6-703(1) ("In any action for damages for personal injury, … allegedly caused by a defect in a product, **a product may not be considered to have a defect or to be in a defective condition, unless** at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer.") (emphasis added). To overcome this

---

[21] *Burns v. Cannondale Bicycle Co*., 876 P.2d 415, 419 (Utah Ct. App. 1994).
[22] *See* U.C.A. §78B-6-703(1).
[23] *Kleinert v. Kimball Elevator Co.*, 854 P.2d 1025, 1027 (Utah Ct. App. 1993) (holding that mere allegations that "because she was injured, the [product] must have been defective" was not enough to survive summary judgment); *accord Niemela v. Imperial Mfg., Inc.*, 2011 UT App 333, ¶10, 263 P.3d 1191, *cert. denied*, 272 P.3d 168 (holding that allegations of defects in mailboxes did not render them unreasonably dangerous).

presumption, the plaintiff [in strict products liability action] "must prove by a preponderance of the evidence that the product is unreasonably dangerous."[24]

Moreover, to hold CAS liable for Plaintiffs' injuries, it is Plaintiffs' burden to establish that the defective product caused those injuries.[25] Under Utah law, causation is an essential element of the plaintiffs' case, whether they proceed under strict liability, negligence, or other tortious theory of liability.[26] The Utah Court of Appeals has held that the plaintiff has to prove "causation hinged on determining whether [the plaintiff's] exposure to a particular defendant's asbestos or asbestos-containing product… were, individually, substantial factors behind [the plaintiff's] having developed peritoneal mesothelioma."[27] Other courts have also held that the plaintiff bears the burden of proof on the issue of exposure to a defendant's product and have held that where there is no exposure there is no causation.[28]

In addition, in the asbestos cases pending in Utah State Court, all of which are adjudicated in the Third Judicial District under one assigned judge, an articulated standard of proof has become the law of the cases. Specifically, "Plaintiffs have the burden of proving that the plaintiff has or had an asbestos-related injury, **that plaintiff was exposed to an asbestos-containing product**

---

[24] *Niemela*, 2011 UT App 333, ¶10 (citing *Egbert v. Nissan North Am., Inc.*, 2007 UT 64, ¶¶14–16, 167 P.3d 1058).
[25] Id.
[26] *Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274, 1279 (10th Cir. 2003) ("The plaintiff must show (1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries.") (emphasis added); *Lamb v. B&B Amusements Corp.*, 869 P.2d 926, 929 (Utah 1993) ("[P]laintiff must allege… (3) that the defective condition was a cause of plaintiff's injuries."); *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985) (stating that a prima facie case of negligence requires proximate and actual causation of the injury).
[27] *Riggs v. Asbestos Corp. Ltd.*, 2013 UT App 86, ¶ 32, 304 P.3d 61.
[28] *See, e.g., Chism v. W.R. Grace & Co.*, 158 F.3d 988, 992 (8th Cir. 1998).

**manufactured by defendant**, and that the exposure to the asbestos-containing product was a substantial factor in causing the injury."[29] Such a law should apply here.

### C. There is no evidence that Mr. Labrum's alleged asbestos exposure was associated with CAS products

As discussed, *supra*, none of the evidence in the record suggests that Mr. Labrum worked with any CAS products. Nowhere in their depositions do Don Labrum, Wayne Labrum, or Doyle Labrum mention their father working with a CAS product.[30] None of them were able to identify the manufacturer of **any** brake part with which their father came into contact.[31] Plaintiffs have identified no other product identification witnesses. In addition, Plaintiffs' written responses to discovery requests contain no reference to Teves products.[32] In short, Plaintiffs have proffered no direct or circumstantial evidence that would even support a reasonable inference that Mr. Labrum ever came into contact with a Teves product, and, much less, evidence supporting an inference he could have been exposed to airborne asbestos fibers from a Teves product.

Hence, summary judgment as to CAS is proper on the threshold issue of exposure. Plaintiffs do not have any evidence (much less admissible evidence) that Mr. Labrum worked with or around a Teves product, let alone an asbestos-containing Teves product.

---

[29] See Appendix, Exhibit F, Mar. 15, 2006 Memorandum Decision, *Sortor v. Asbestos Defendants*, Case No. 040909899, Third Judicial District Court, Salt Lake County; *see also* Appendix, Exhibit G, Sept. 6, 2007 Memorandum Decision, *In re: Asbestos Litigation*, Case No. 010900863, Third Judicial District Court, Salt Lake County (emphasis added).
[30] *See,* generally, Appendix, Exhibits B, C, and D.
[31] *See id.*
[32] *See* Appendix, Exhibit E.

### D. CAS brake components were not a "substantial factor" in causing Mr. Labrum's alleged asbestos-related disease.

Furthermore, there is no evidence that Teves brake components were a "substantial factor" in causing Mr. Labrum's mesothelioma. Plaintiffs' assertions that Teves' products caused and/or contributed to Mr. Labrum's alleged mesothelioma – a disease that develops via inhalation of airborne asbestos fibers, among other reasons – lack merit, as there is no evidence that Mr. Labrum worked with or around any Teves products. Given the absence of evidence of Mr. Labrum's exposure to asbestos from any Teves products, it necessarily follows that such products could not have been and were not a substantial factor in causing his mesothelioma. As set forth above, a finding of substantial factor causation requires evidence of regular work with an asbestos-containing product over an extended amount of time. Here, there is no evidence that Mr. Labrum did any work, much less regular work, with or around an asbestos-containing Teves product.

Thus, Plaintiffs' claims as to CAS fail for lack of evidence of "substantial factor" causation as well. Summary judgment in CAS's favor is warranted.

## IV.   CONCLUSION

In this case, there is no evidence to show that products manufactured by Teves were defective. Moreover, there is no evidence to show that Mr. Labrum was exposed to a product manufactured by Teves. Therefore, CAS requests that the Court grant this motion for summary judgment and dismiss this case as to CAS with prejudice.

DATED this 17th day of December 2020.

            **DUNN & DUNN, P.C.**

            /s/ SUSAN BLACK DUNN
            Susan Black Dunn
            W. Lewis Black
            *Attorneys for Defendant*
            *Continental Automotive Systems,*
            *Inc., f/k/a Continental Teves, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December 2020, I caused a true and correct copy of the foregoing **DEFENDANT CONTINENTAL AUTOMOTIVE SYSTEMS, INC. F/K/A CONTINENTAL TEVES, INC.'S MOTION FOR SUMMARY JUDGMENT** to be filed electronically via the Court's CM/ECF system, which sent notification of such filing on all counsel of record in this case.

                                              **DUNN & DUNN, P.C.**

                                              /s/ W. LEWIS BLACK
                                              Attorney