IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SALLY SYLVESTER, Individually and as Personal Representative of the Estate of JESSE LABRUM, Deceased, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE BIRD CORPORATION, *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-470<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

This is an asbestos-related wrongful death and negligence suit. Plaintiffs allege that decedent Jesse Labrum, an auto mechanic, was "exposed to asbestos from brakes, clutches, and gaskets during his dismantling of vehicles as the main part of Labrum Auto Wrecking's business." Dkt. No. 129 ¶ 2. At age 91, Mr. Labrum was diagnosed with, and ultimately died from, mesothelioma. Plaintiffs brought this suit against multiple defendants, including Federal Mogul Asbestos Personal Injury Trust, the successor to Felt Product Manufacturing Company ("Fel-Pro"), and Morse TEC LLC, the successor by merger to Borg-Warner Corporation. Federal Mogul and Morse TEC have both moved for summary judgment. For the following reasons, the court grants the motions.

## I.

From the early 1960s until at least 1994, Mr. Labrum owned and operated Labrum Auto Wrecking. Labrum Auto Wrecking's core business involved purchasing wrecked vehicles and either repairing them or dismantling them and selling their parts. When vehicles were dismantled, they were stripped of everything of value, including engines, brakes, differentials, transmissions, clutches, and other mechanical components. Plaintiffs have produced a dismantling permit spreadsheet that documents more than 1,700 vehicles taken apart by Labrum Auto Wrecking between 1957 and 1985, though one of Mr. Labrum's sons who worked with him at Labrum Auto Wrecking testified at his deposition that the spreadsheet is incomplete. A large number of the listed vehicles were produced by the "Big Three"—General Motors, Chrysler, and Ford—though some of the vehicles were produced by various other manufacturers.

During the period covered by the spreadsheet, numerous automotive components contained asbestos, including brakes, clutches, and some sealing gaskets. Plaintiffs presented evidence that Mr. Labrum frequently encountered such components while dismantling vehicles and that he often did things with these components, such as grinding or cleaning them, that would release asbestos dust into the air. Plaintiffs contend that Mr. Labrum's exposure to this asbestos dust ultimately caused his mesothelioma. Plaintiffs further contend that these "asbestos-containing products . . . were manufactured, designed, and distributed by the Defendants," and that Defendants are therefore liable for Mr. Labrum's illness and death. Dkt. No. 129 ¶ 9.

At the close of discovery, Federal Mogul and Morse TEC each moved for summary judgment. Federal Mogul argues that "Plaintiffs have failed to present any evidence that Jesse Labrum was ever exposed to any asbestos-containing product manufactured or supplied by Fel-Pro." Dkt. No. 137 at 2. Morse TEC likewise argues that "Plaintiffs have no evidence that the

decedent, Mr. Labrum, ever came into contact with a product made or distributed by Borg-Warner, let alone evidence of substantial contact with such products as required to make a prima facie case of asbestos related injury." Dkt. No. 148 at 2.

## II.

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law"; a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

According to the state trial court handling the master Utah asbestos litigation, a plaintiff asserting claims for asbestos-related illness or death must prove "that plaintiff had or has an asbestos related injury, that plaintiff was exposed to an asbestos containing product manufactured by defendant, and that the exposure to the asbestos containing product was a substantial factor in causing the injury." *In re Asbestos Litigation*, Case No. 010900863, Memorandum Decision at 6 (Utah Third Judicial District, Sept. 5, 2007) (quotation omitted). Plaintiffs do not take issue with this legal framework, and the court will apply it here. *See also Riggs v. Asbestos Corp.*, 304 P.3d 61, 72 (Utah Ct. App. 2013) (explaining that exposure to a defendant's products must be a "substantial factor" in causing the harm).

### A.

Federal Mogul argues that none of Mr. Labrum's three sons who worked with him at Labrum Auto Wrecking "named, testified about, or identified any Fel-Pro equipment or products" that Mr. Labrum encountered, that "Plaintiffs have not identified any other witnesses

3

who will offer product identification testimony in this case," and that Plaintiffs have failed to offer any other "evidence that identifies any product manufactured or sold by Fel-Pro" to which Mr. Labrum was exposed. Dkt. No. 137 at 2–3. Federal Mogul argues that "[w]ithout proof of any exposure to any asbestos-containing products manufactured by Fel-Pro, Plaintiffs' claims must be dismissed with prejudice." *Id.* at 6.

In response, Plaintiffs point to a promotional document in which "Fel-Pro boasts that they were founded in 1918 and, as late as 2018, 'remain the predominant brand of automotive sealing products.'" Dkt. No. 156 at 3 (quoting Dkt. No. 155-5 at 4). Plaintiffs also invoke Federal Mogul's admissions that some of Fel-Pro's gaskets contained asbestos as late as 1991, *see* Dkt. No. 155-6 at 8–9, and that Fel-Pro "sold a full line of gaskets for use in conjunction with internal combustion engines for approximately 75 years," Dkt. No. 155-7 at 10.

Plaintiffs maintain that this promotional document and these admissions provide "ample evidence that Mr. Labrum removed or assisted in the removal of multiple engine gaskets from thousands of vehicles in a time period where Fel-Pro was a substantial supplier of asbestos-containing engine gaskets to the automotive industry, and that work exposed him to asbestos-containing dust." Dkt. No. 156 at 4. Plaintiffs also assert, without further evidentiary citation, that "Fel-Pro brands were undoubtedly on a large number of cars which Mr. Labrum completely disassembled." *Id*. at 3.

The court concludes that Plaintiffs have failed to identify any genuine dispute of material fact that forecloses summary judgment for Federal Mogul. The promotional document cited by Plaintiffs was created in 2018 and offers no information regarding Fel-Pro's sales volume, market share, or customers during the time Mr. Labrum was working on cars. Further, the admissions on which Plaintiffs rely state only that a "limited number" of gaskets contained

asbestos, Dkt. No. 155-6 at 9, while also explaining that "many types . . . never contained asbestos," Dkt. No. 155-7 at 11. The promotional document and admissions thus establish only that Fel-Pro manufactured some gaskets containing asbestos during the time that Mr. Labrum was dismantling cars. They do not establish that Mr. Labrum actually or even likely encountered products manufactured by Fel-Pro that contained asbestos.

Plaintiffs have identified no evidence regarding how many Fel-Pro gaskets contained asbestos, which car manufacturers those gaskets were sold to, or what percentage of vehicles contained these gaskets. Nor has Plaintiff identified any other evidence that Mr. Labrum actually or likely encountered gaskets manufactured by Fel-Pro that contained asbestos. In sum, Plaintiffs have offered no direct evidence of exposure and their circumstantial evidence is so speculative that it fails to create a genuine issue of material fact. *Cf. Menne v. Celotex Corp.*, 861 F.2d 1453, 1463 (10th Cir. 1988) ("Under a federal test of the sufficiency of circumstantial evidence, an inference must not be based on conjecture, speculation, or mere possibility.").

Even if a jury could reasonably find that Mr. Labrum encountered some Fel-Pro gaskets that contained asbestos, Plaintiffs have identified no evidence that could support a reasonable finding that Mr. Labrum's exposure to these gaskets was a "substantial factor" in causing Mr. Labrum's disease. Indeed, Plaintiffs' own expert, Dr. Holstein, neither references Fel-Pro nor offers any causation analysis or opinion that is specific to Fel-Pro in his report.

### B.

Morse TEC argues that "Plaintiffs failed to identify, in either iteration of their Complaint, any particular product made or distributed by Borg-Warner that Mr. Labrum came in contact with or that could be deemed to be the cause of Mr. Labrum's injuries," that none of Plaintiffs' responses to interrogatories or requests for production identified "any product manufactured by

5

Borg-Warner that Mr. Labrum came in contact with," that none of Mr. Labrum's three sons identified any Borg-Warner products that Mr. Labrum encountered during their depositions, and that "Plaintiffs have not identified any other witness who would offer product identification testimony." Dkt. No. 148 at 3–4.

In response, Plaintiffs rely on Morse TEC's admissions in prior litigation that Borg-Warner manufactured manual clutch assemblies that contained asbestos from 1928–1986, and produced disc brake pads that contained asbestos from 1971–1975; that Borg-Warner supplied these products to Original Equipment Manufacturers and wholesale distributors; and that Ford, General Motors, and Chrysler were Borg Warner's largest customers. *See* Dkt. No. 162-5 at 12, 27–28; Dkt. No. 162-6 at 7. Plaintiffs also rely on the 2011 deposition testimony of Richard Anderson, who was designated as Borg-Warner's corporate representative in a previous lawsuit. Mr. Anderson testified that Borg-Warner sold products to Ford, General Motors, and Chrysler that Borg-Warner knew contained asbestos. *See* Dkt. No. 162-10 at 51:7-9, 55:16-20.

The court agrees with Morse TEC that none of this suffices to create a genuine dispute of material fact that forecloses summary judgment. To be sure, this evidence does establish that Borg-Warner supplied some products containing asbestos to Ford, Chrysler, and General Motors and that Mr. Labrum dismantled some cars made by those manufacturers. But the court concludes that, absent improper conjecture and speculation, a reasonable jury could not find, based solely on this evidence, that Mr. Labrum in fact encountered products containing asbestos that were made by Borg-Warner, let alone that he encountered such products often enough that his exposure to them constituted a substantial factor in causing his disease and death *Cf. Menne*, 861 F.2d at 1463.

Plaintiffs also rely on deposition testimony given in another case in 1995 by John Froning, a General Motors employee. Mr. Froning testified that "virtually 100 percent" of clutches used in GM vehicles from the early 1960s until the early 1980s came from Borg-Warner and that Borg-Warner was the only supplier of the clutches used in GM passenger vehicles. Dkt. No. 162-9 at 24:2–26:8. Plaintiffs contend that Mr. Froning's deposition testimony, coupled with the dismantling permit spreadsheet showing that Mr. Labrum worked on numerous GM vehicles, demonstrates "that Mr. Labrum removed automatic transmissions and manual clutches from hundreds of vehicles containing Borg-Warner components." Dkt. No. 162 at 4. Plaintiffs are surely correct that this deposition testimony strengthens the inference that Mr. Labrum encountered products containing asbestos that were manufactured by Borg-Warner. For the reasons explained next, however, the court need not decide whether this testimony, coupled with Plaintiffs' other evidence, creates a genuine issue of material fact that forecloses summary judgment for Morse TEC.[1]

Morse TEC objects to Plaintiffs' reliance on this deposition testimony because Plaintiffs failed to disclose this deposition as a potential exhibit and likewise failed to disclose John Froning as a potential witness. *See* Dkt. No. 173-1. The court sustains this objection.[2]

Federal Rule of Civil Procedure 26 requires parties to disclose potential witnesses and exhibits and to supplement those disclosures as new information becomes available. *See* FED. R.

---

[1] Even if Mr. Froning's testimony suffices to create a genuine issue of material fact regarding Mr. Labrum's exposure to Borg-Warner products containing asbestos, it is far less clear whether it creates a genuine issue of material fact regarding whether such exposure was a "substantial factor" in causing Mr. Labrum's disease. Assuming it may properly be considered, Dr. Holstein's report neither identifies any industrial hygiene studies relating to clutch removal nor discloses any causation opinions that are specific to Borg-Warner products.

[2] Morse TEC objects on the same grounds to Plaintiffs' reliance on the 2011 testimony of Mr. Anderson. Because the court concludes that Mr. Anderson's testimony does not create a genuine dispute of material fact, it declines to rule on this objection.

CIV. P. 26(a) & (e). If a party fails to do so, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In determining whether a failure to disclose is substantially justified, a court considers four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The ultimate determination is "entrusted to the broad discretion of the district court." *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191–92 (10th Cir. 2009).

These factors weigh against excusing Plaintiffs' default. First, the prejudice here is appreciable. Mr. Froning's deposition was taken in a different lawsuit a generation ago. Morse TEC had no notice that Plaintiffs would seek to rely on that deposition until Plaintiffs filed their opposition to Morse TEC's motion for summary judgment—more than six months after the close of fact discovery. Even assuming that Mr. Froning is still living and available, it is thus too late for Morse TEC to seek to depose him. And while allowing Plaintiffs to rely on Mr. Froning's testimony would not disrupt trial (since trial has not yet been scheduled), Plaintiffs' invocation of this deposition appears to be belated attempt to buttress the factual shortcomings of the case against Morse TEC that Plaintiffs had previously disclosed and developed through discovery with 25-year old testimony from a different case that Plaintiffs either previously knew of but chose not to disclose or that they could have discovered and disclosed had they exercised reasonable diligence. It is significant as well that Plaintiffs failed to invoke this testimony until after Morse TEC filed its motion for summary judgment highlighting the factual deficiency of

Plaintiffs' case against it. For all of these reasons, the court will not consider Mr. Froning's testimony.

*   *   *

For the foregoing reasons, the court **GRANTS** both Federal Mogul's Motion for Summary Judgment, Dkt. No. 137, and Morse TEC's Motion for Summary Judgment, Dkt. No. 148.[3] This action remains pending against Lear Seigler, which has not responded in any way to Plaintiffs' lawsuit; Ford Motor Company and Honeywell International, both of which have reportedly reached settlement agreements with Plaintiffs but not yet filed dismissal papers; and Maremont Corporation, subject to the automatic bankruptcy stay.

**IT IS SO ORDERED.**

Dated this 13th Day of January, 2022

_____
Howard C. Nielson, Jr.
United States District Judge

---

[3] In light of the court's disposition of these summary judgment motions, Federal Mogul's Motion to Exclude Plaintiffs' Experts' Unreliable Causation Opinions, Dkt. No. 222, and Morse TEC's Motion to Exclude Plaintiffs' Experts' Unreliable Causation Opinions, Dkt. No. 244, are **DENIED** as moot.